UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

GRENDA RAY HARMER                     )
                                      )
              Petitioner,             )
v.                                    )              3:06-cv-463
                                      )              *Phillips*
                                      )
WAYNE BRANDON, Warden,                )
                                      )
              Respondent.             )

## MEMORANDUM

This is a petition for the writ of habeas corpus, pursuant to 28 U.S.C. § 2254, filed by

petitioner Grenda Ray Harmer ("petitioner").  The matter is before the court on the answer

to the petition filed by the Tennessee Attorney General on behalf of the respondent and

petitioner's response thereto.  For the following reasons, the petition for the writ of habeas

corpus will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**.


I.    Standard of Review


        A state prisoner is entitled to habeas corpus relief "only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254.  Under Rule 8 of the Rules Governing Section 2254 Cases In The United States

District Courts, the court is to determine, after a review of the answer and the records of the

case, whether an evidentiary hearing is required.  If no hearing is required, the district judge

is to dispose of the case as justice dictates. If the record shows conclusively that petitioner is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.     Factual Background

        The respondent has provided the court with copies of the relevant documents as to petitioner's post-conviction proceedings. [Court File No. 6, Notice of Manual Filing of Documents, Addenda I-II]. Petitioner was indicted by the Knox County Grand Jury in a multiple-count indictment for the following offenses in four separate cases: especially aggravated robbery, especially aggravated kidnapping, and aggravated kidnapping in Case No. 67232; attempted first degree murder and especially aggravated robbery in Case No. 67748; indecent exposure, aggravated assault, and reckless endangerment in Case No. 67231; and reckless driving in Case No. 67233. After the denial of his motion to suppress, and on the eve of trial, petitioner pleaded guilty to one count of especially aggravated robbery, one count of aggravated robbery, one count of especially aggravated kidnapping, one count of aggravated assault, and one count of reckless endangerment. Pursuant to the plea agreement, he was sentenced to an aggregate term of imprisonment of 25 years. *See State v. Harmer*, No. E2005-01580-CCA-R3-PC, 2006 WL 1472513 (Tenn. Crim. App. May 30, 2006) (Opinion affirming the denial of post-conviction relief) [Addendum II, Doc. 3], *perm. app. denied, id.* (Tenn. Oct. 30, 2006) [Addendum II, Doc. 5]. Petitioner subsequently filed a

petition for post-conviction relief, which was denied after an evidentiary hearing and the

Tennessee Court of Criminal Appeals affirmed. *Id.*

The appellate court summarized the facts behind petitioner's conviction and the

circumstances with respect to the motion to suppress as follows:

> After entry of his guilty pleas, the petitioner timely filed a pro se
> petition for post-conviction relief. Following appointment of post-conviction
> counsel, an evidentiary hearing was held. At the hearing, the petitioner's
> original defense counsel testified regarding his strategy and performance at the
> suppression hearing. He testified that he filed a motion to suppress the
> evidence challenging the stop of the petitioner's vehicle. At the suppression
> hearing, he attacked the credibility of Police Officer Hagaman, exploring the
> fact that Officer Hagaman had assaulted a suspect and lied about the incident.
> Defense counsel recalled that he reviewed the warrants, arrest reports, and the
> preliminary hearing tapes in preparation for the suppression hearing. He also
> reviewed case law relevant to reckless driving and took photographs of the
> scene of the arrest. Defense counsel stated that the trial court found the felony
> stop was legal notwithstanding the fact that he was able to demonstrate
> inconsistencies in Officer Hagaman and Mr. Bailey's testimony.
>
> Defense counsel testified that the discovery he received from the state
> indicated the Knoxville Police Department had a videotape of the stop and
> arrest. Defense counsel stated that pursuant to the rules of discovery, he asked
> for the videotape several times, but never received it. Defense counsel recalled
> that he later received a letter from the state indicating that the videotape no
> longer existed. Defense counsel said that the videotape might have been
> helpful in attacking the validity of Officer Hagaman's stop of the petitioner.
> Defense counsel also recalled that he was unable to gain access to the
> petitioner's car in order to verify that the engine made a knocking noise, as
> suggested by Officer Hagaman.
>
> On cross-examination, defense counsel testified that he had extensive
> experience as a criminal defense lawyer. He stated that he reviewed and
> evaluated all the evidence that the state planned to introduce at trial. He said
> he discussed with the petitioner his case and the potential sentence he might
> receive if convicted at trial. Defense counsel said that the petitioner ultimately
> pled guilty to several charges involving four victims on the eve of trial.
> Defense counsel recalled that the state's original plea offer was thirty-five or

3

forty years, but ultimately the state offered twenty-five years. He also recalled that the petitioner had a number of previous felony convictions.

The petitioner also testified at the post-conviction hearing. However, his testimony related only to his claim that he pled guilty because of the unsuccessful motion to suppress. On cross-examination, the petitioner acknowledged that he had previous convictions for escape, sexual assault, first degree burglary, and threatening the life of a president. The petitioner also acknowledged that he pled guilty and that his twenty-five-year sentence gave him the possibility of not spending the rest of his life in prison.

Following the hearing, the post-conviction court issued a written order denying post-conviction relief. Herein, the post-conviction court set forth its findings of fact and conclusions of law. The post-conviction court's finding of facts aptly summarizes the facts of the suppression hearing and the factual basis stipulated at the plea submission hearing. Accordingly, below is the post-conviction court's findings of fact relevant to the petitioner's issues on appeal:

On November 26, 1998 at 7:00 a.m. Ms. Connie Richards went to a car wash on Chapman Highway to [clean her car]. Within five minutes of her arrival at the car wash, she was grabbed from behind by a person who put a rope-like item around her neck and tightened it and told her that he would kill her if she screamed. Ms. Richards was robbed, [and taken] some two hundred eighteen feet from her vehicle, where she was tied to a tree and again threatened with death. Her attacker was naked from the waist down. He wore a ski mask or toboggan which covered his face, with the exception of his eyes and [eyebrow] area. He wore gloves, dark half boots and a green pullover shirt.

[On the same day, Melissa Ayers was attacked]. The location of this offense was at the Labor Ready employment business on Magnolia Avenue in Knox County. Ms. Ayers was in her place of employment at an early morning hour between 6:30 a.m. and 7:00 a.m. preparing payroll checks. Ms. Ayers was working at a back office when someone came up behind her, placed a rope-type item around her neck, and [choked] her to the point that she passed out. When she became conscious again, she was outside of her office where she had been dragged.

Her assailant was naked from the waist down, wearing a toboggan-type mask and gloves along with brown shoes. The assailant robbed Ms. Ayers, taking her purse and its contents. An investigation of the crime scene revealed a tan boot string used [to] lace up construction boots. DNA analysis of the boot string revealed bodily fluids of the [petitioner] and Ms. Ayers. The [petitioner] had been previously a temporary worker who had used the Labor Ready services.

[Earlier, around 5:30 a.m., Roger Bailey was working with his wife at a Weigel's market when he heard his wife scream.] ... [Mr. Bailey] overheard a co-employee cursing and hollering at an individual who had confronted her outside the store, this individual being a white male who was nude. Mr. Bailey exited the building and attempted to apprehend the individual. He chased the nude individual who was wearing a dark ski mask and dark boots. [This individual] ... entered an older model automobile and attempted to run over Mr. Bailey.... [Mr.] Bailey was able to get a partial license plate number, 264. He described the automobile as being of a 1970's square Chrysler-type vehicle, light blue rusty/ faded blue color, in his report to the investigating officer who was Officer Samuel Hagaman.

At 12:30 a.m. on November 27, 1998, [O]fficer Samuel E. Hagaman was on routine patrol traveling westbound on Kingston Pike approaching David Lane. David Lane apparently intersects Kingston Pike at a ninety degree angle. Officer Hagaman testified at the preliminary hearing that he observed a small dark colored automobile coming toward Kingston Pike from behind Conoco Market on David Lane in the wrong lane of traffic. Hagaman executed a U-turn west of David Lane after the car in question made an eastbound turn on Kingston Pike. After falling in behind [the petitioner], the officer observed that the vehicle bore licen[s]e number 264 ADP and met the description of the older model automobile involved in the earlier aggravated assault at Weigel's, which he had investigated several hours earlier. Officer Hagaman then initiated a felony stop because of his knowledge of the prior felony complaint and ... for the reckless driving which he allegedly observed. [The petitioner] was the driver and only occupant of the vehicle

Case 3:06-cv-00463   Document 17   Filed 08/18/11   Page 5 of 22   PageID #: 20

stopped by Hagaman. Hagaman's stop was a felony stop in which the occupant was removed from the vehicle, cuffed and placed in the patrol car. Hagaman testified that he observed in plain view a shoe lace in the floorboard of the automobile and a toboggan extending out of the glove compartment, both items matching the description of the items in the assault[s] of the previous day. Ultimately, DNA analysis of the orange boot lace found in the floorboard of the automobile linked [the petitioner] to [Ms.] Connie Richards' assault. Obviously, the toboggan and physical evidence in the automobile itself linked [the petitioner] to the Ayers and Bailey assaults.

....

At the time of [the guilty] pleas [the petitioner] was represented by [defense counsel]. At the suppression [hearing] only two witnesses were presented. Those witnesses were Mr. Roger Bailey and Officer Samuel Hagaman. It was the [petitioner's] position that the traffic stop was pretextual and violated his Fourth Amendment right. Therefore, all of the evidence, i.e., boot lace, toboggan, etc., should be excluded. At the suppression hearing Officer Hagaman testified that he stopped [the petitioner] for three reasons; (1) He allegedly had observed [the petitioner] operating his car in a reckless manner, (2) the car matched a previous lead distributed BOLO, and (3) the vehicle allegedly matched the description of a car involved in an incident at Weigel's store the previous day to which Officer Hagaman had responded.

....

... The trial court, after hearing the evidence at the suppression hearing, ruled that there was a valid stop and a valid arrest of [the petitioner] on three separate bases. The trial court overruled the Motion to Suppress in its entirety and found that the evidence which was seized at the time of the arrest was admissible.

Id. at **1-4 (quoting the Findings of Facts of the trial court) (footnote omitted).

In support of his petition for the writ of habeas corpus, petitioner alleges (1) the trial court erred in denying post-conviction relief on the basis of ineffective assistance of counsel, and (2) the trial court erred in denying post-conviction relief on the basis of destruction of evidence. The respondent contends that petitioner is not entitled to relief because the decisions of the state courts rest on reasonable determinations of the facts and reasonable applications of federal constitutional law, and that any claim not raised in the state courts has been procedurally defaulted.

III. Procedural Default

The doctrine of procedural default is an extension of the exhaustion doctrine. A state prisoner's petition for a writ of habeas corpus cannot be granted by a federal court unless the petitioner has exhausted his available state court remedies. 28 U.S.C. § 2254. This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971). *See also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (Exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review."). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

7

Petitioner cannot file another state petition for post-conviction relief. Tenn. Code Ann. § 40-30-102(c). Accordingly, he has no remedy available to him in the Tennessee state courts for challenging his conviction and is deemed to have exhausted his state remedies.

It is well established that a criminal defendant who fails to comply with state procedural rules which require the timely presentation of constitutional claims waives the right to federal habeas corpus review of those claims "absent a showing of cause for the non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). *Accord Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.").

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

8

IV.    State Court Findings

Pursuant to 28 U.S.C. § 2254(d), petitioner may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court.  In addition, findings of fact by a state court are presumed correct and petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).  Petitioner has failed to rebut, by clear and convincing evidence, the findings of the state courts and they will be presumed correct by this court.

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1).  A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 413.  A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

9

incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. In light of the foregoing, the court will consider petitioner's claims for relief.

V.    Discussion of Claims

*A. Effectiveness of Counsel*

In *Strickland v. Washington*, 466 U.S. 668 (1984) the Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged

action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id*. at 691-92.

The two-part test of Strickland also applies to ineffective assistance of counsel claims in cases involving guilty pleas. *Hill v. Lockhart*, 474 U.S. 52 (1985).

> We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, [411 U.S. 258 (1973)], and *McMann v. Richardson*, [397 U.S. 759 (1970)]. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id*. at 58-59 (footnote omitted).

Petitioner alleges that his rights to due process and the effective assistance of counsel were violated during the suppression hearing. At the conclusion of the suppression hearing, the trial court denied the motion to suppress. Petitioner states that he agreed to accept the plea offer and plead guilty only after the trial court's adverse ruling on the suppression motion.

According to petitioner, all of the evidence supporting the charges against him was obtained as a result of his arrest and the search of his vehicle. Petitioner contends that the arresting officer, Samuel E. Hagaman, lacked probable cause to stop him and that Officer

11

Hagaman gave false testimony at the preliminary hearing. He also claims that Officer Hagaman's testimony at the suppression hearing was inconsistent with both his testimony at the preliminary hearing and his affidavit supporting the arrest warrant, but that counsel failed to question Officer Hagaman about the inconsistencies. Finally, petitioner claims that counsel failed to question Officer Hagaman concerning the discrepancy between the petitioner's vehicle and the description of the suspect's vehicle. Essentially, he claims that his attorney was ineffective by failing to more effectively challenge Officer Hagaman's testimony regarding probable cause during the suppression hearing.

Petitioner raised this claim in his post-conviction petition before the trial court.

It is the petitioner's contention that credibility of Officer Hagaman was crucial at the suppression hearing and that defense counsel was ineffective in the preparation and presentation of the suppression hearing. Mr. Harmer complains that his counsel failed to impeach Officer Hagaman with inconsistencies between his preliminary hearing testimony, the factual basis of the warrant which Hagaman obtained, and the suppression descriptions of those events that Officer Hagaman gave as factual bases for his assertion of observing incidents of reckless driving justifying the officer's stop and inquiry.

[Addendum 1, Vol. 2, Order denying Post-Conviction Relief, pp. 213-14].

The trial court noted that, at the preliminary hearing, Officer Hagaman testified that he observed petitioner driving in the wrong lane of traffic on David Lane, but at the suppression hearing the officer testified that he observed petitioner's car being driven so fast that when it came out of a parking lot its momentum carried it into the oncoming lane of traffic on David Lane. [*Id*. at 214]. The court further noted that other discrepancies existed in the warrant that Officer Hagaman obtained, which were not raised by counsel at the

suppression hearing. Nevertheless, the trial court also noted that, "in addition to the various accounts of reckless driving, there existed other factual bases for the stop such as the licence number and general description of the vehicle in the prior aggravated assault which Hagaman had investigated." [*Id*.]. The court thus concluded "It cannot be said that clear and convincing evidence exists that pursuit of these discrepancies would have led to a finding that the stop was illegal." [*Id*].

The trial court also stated that "[c]omplaint is made that Mr. Irvine[1] was ineffective in failing to explore at the suppression hearing the discrepancies in the description of the vehicle involved in the earlier Weigel assault." [*Id*.]. The court observed, however, that counsel unsuccessfully argued during the suppression hearing the discrepancies between the witness' description and the actual description of petitioner's car. [*Id*. at 215].

> Officer Hagaman had testified that he had investigated the aggravated assault at the Weigel's store the day before and had taken a description of the nude assailant and his vehicle which included a partial licence tags [sic] number of 264. The vehicle which he observed on the morning of the arrest bore licence plate 264 ADP which matched the description of the licence and the automobile's general description as an older vehicle of the automobile involved the aggravated assault just hours before.

[*Id*].

Petitioner also claimed in the trial court that counsel failed to impeach Officer Hagaman with evidence of the officer's misconduct as a police officer. As the trial court found, however, counsel "was allowed to question Officer Hagaman about these allegations

---

[1]Petitioner was represented at by Kenneth F. Irvine, Jr., at the time of the suppression hearing and the entry of petitioner's guilty pleas.

and brought to the court's attention these allegations of inappropriate conduct by his questions." [*Id*. at 215-16].

In considering petitioner's claim of ineffective assistance, the trial court first referenced an accused's Sixth Amendment right to the effective assistance of counsel and then noted that the two-prong test of *Strickland v. Washington* set the standard for evaluating claims of ineffective assistance of counsel. [*Id*. at 218-19]. The court found that petitioner had failed to demonstrate ineffective assistance of counsel under the *Strickland* standard. [*Id*. at 219].

On appeal from the denial of post-conviction relief, the Tennessee Court of Criminal Appeals also noted that *Strickland v. Washington*'s two-prong test is the standard for considering ineffective assistance claims. *Harmer v. State*, 2006 WL 1472513 at *4. The appellate court agreed with the trial court that petitioner had failed to demonstrate ineffective assistance of counsel.

> Upon our review of the record, we conclude that the petitioner has not proven his claim of ineffective assistance of counsel. To begin, we are not convinced that counsel's performance was deficient given his examination and impeachment of Officer Hagaman's testimony. As the post-conviction court noted, the transcript of the suppression hearing reflects that counsel made a vigorous effort to discredit Officer Hagaman's testimony. However, despite counsel's effort, the lower court ruled that evidence existed to support Officer Hagaman's felony stop. In our view, the fact that counsel did not add to his impeachment efforts does not demonstrate deficient performance of counsel. In sum, counsel should not be deemed to have been ineffective merely because he failed to employ additional modes of impeachment which may or may not have produced a different result. A defendant is not entitled to perfect or error-free representation, only constitutionally adequate representation.

14

In addition, we conclude that the petitioner failed to demonstrated prejudice: that but for the errors of his counsel at the suppression hearing he would not have pled guilty. Certainly, we agree with the post-conviction court that Officer Hagaman's testimony relevant to his probable cause for stopping the petitioner was encumbered with inconsistencies. Nonetheless, as the post-conviction court found, there existed some evidence supporting Officer Hagaman's stop of the petitioner's automobile. As such, the felony stop was valid under the circumstances of this case. Furthermore, the record reflects that the petitioner stipulated to the facts of his guilt at the guilty plea hearing. Interestingly, the stipulated facts indicate that the state had recovered from one of the crime scenes a boot string with the petitioner's DNA on it. This incriminating evidence was independent of the evidence discovered as a result of the felony stop. Also, the record reflects that one of the victims knew the petitioner. Finally, the record reflects that the petitioner pled guilty on the eve of trial after being advised of his rights by both his counsel and the trial court. Therefore, given the totality of the evidence, it is our view that the petitioner did not prove by clear and convincing evidence that the exclusion of the evidence obtained by the allegedly illegal stop would have sustained the petitioner's resolve to not plead guilty and insist on going to trial. Accordingly, we conclude that the evidence does not preponderate against the post-conviction court's findings, and the petitioner is not entitled to relief on this issue.

*Id*. at **5-6 (internal citations omitted).

This court has reviewed the record of petitioner's post-conviction proceedings. [Addendum I, Vol. 1-2, Technical Record of Post-Conviction Proceedings (two volumes); Vol. 3, Transcript of the Evidence (one volume, including exhibits]. The findings of the state courts are supported in the record.

During the hearing on the motion to suppress, defense counsel questioned Officer Hagaman about his ability to observe petitioner's car prior to the stop as well as the discrepancies between petitioner's car and the witness' description of the car. [Addendum 1, Vol. 3, Transcript of the Post-Conviction Evidentiary Hearing, Exhibit 3, Transcript of the

15

Hearing on the Motion to Suppress, pp. 35, 42-43]. Because Officer Hagaman's credibility was crucial on the suppression issue, counsel vigorously questioned the officer concerning his termination from the Knoxville Police Department for inappropriate conduct, including falsifying reports. [*Id*. at 45-47]. Despite counsel's efforts, the trial court denied the motion to suppress. [*Id*. at 62]. Under the circumstances, petitioner received "constitutionally adequate representation." *Pillette v. Berghuis*, 408 F. App'x 873, 891 (6th Cir. 2010).

In addition, as the trial court observed, based his prior criminal history, had petitioner been convicted of all the charges in the indictment, he was facing enhanced sentencing which "could have resulted in a sentence of essentially life in prison." [Addendum 1, Vol. 2, Order denying Post-Conviction Relief, p. 209]. Given that, as well as the additional evidence against petitioner, he has failed to demonstrate that but for counsel's alleged errors, he would not have pleaded guilty and instead gone to trial.

Based upon the foregoing, this court concludes that the state courts' determinations that petitioner received the effective assistance of counsel during the suppression hearing were neither contrary to, nor did they involve an unreasonable application of, federal law as established by the Supreme Court in *Strickland v. Washington* and *Hill v. Lockhart*. Petitioner is not entitled to relief on this claim. Any other claims of ineffective assistance of counsel have been procedurally defaulted.

16

Petitioner alleges that the State permitted the destruction of two items of significant evidence relevant to the suppression issue, in violation of his due process rights: (1) petitioner's automobile, and (2) the videotape of the stop and arrest. Petitioner relies on *Brady v. Maryland*, 373 U.S. 83 (1963), in support of this claim.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. Impeachment evidence as well as exculpatory evidence "falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985). "Favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (quoting *Bagley*, 473 U.S. at 682).

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Petitioner raised this claim in his post-conviction petition before the trial court.

A significant portion of Mr. Harmer's Post-Conviction Relief Petition claims that his convictions should be set aside because the State violated his due process rights to exculpatory evidence by the destruction of certain evidentiary items. This claim is based on the assertion that the State destroyed or failed to provide the defense of [sic] a copy of a video tape of the arrest of Mr. Harmer from the police cruiser. This tape apparently would have been generated by a video camera mounted in the police cruiser. The State's responses to earlier informal discovery had verified that such a video tape existed. Mr. Harmer's attorney, Mr. Kenneth Irvine, repeatedly sought a copy of the video tape and ultimately sought discovery of the same. However, State representatives confirmed that the video tape was no longer available by October of 2000....

...

Mr. Harmer's automobile was impounded on the date of his arrest in 1998 and ultimately that vehicle was disposed of by the Knox County Sheriff's Department in October of 2000. It, therefore, was disposed of after the Motion to Suppress had been heard and ruled upon, August 10, 2000, but before the ultimate resolution of the case by plea on July 17, 2001. Mr. Harmer complains that this disposition prohibited him from having exculpatory evidence that refuted the claim of the arresting officer as well as witness Bailey, that his vehicle's engine made a knocking noise, and, therefore, this State action violated his due process rights....

[Addendum 1, Vol. 2, Order denying Post-Conviction Relief, pp. 219-20].

The trial court found that "the destruction of the video tape and the disposition of the automobile by Knox County are inexcusable. There is no question that the State had a duty to preserve all of this evidence as it was subject to discovery and inspection under Tenn. R. Crim. P. 16." [*Id*. at 222]. Nevertheless, the trial court determined that "the record fails to demonstrate that either of these items would have been exculpatory." [*Id*. at 220].

With respect to the videotape, the trial court first noted that "[i]n this court's experience, video camera equipment is fixed-mounted in the front of the cruiser and is activated by initiating the blue lights on the cruiser or by manually initiating photography by the officer. [*Id*.]. The trial court then observed that "the police cruiser video camera tape would not have captured events which were transpiring out of the field of the camera angle, i.e., on the side of the police cruiser. Nor would they have captured events occurring in front of the cruiser prior to the activation of the camera by initiating the blue lights, in most cases, or by manual activation." [*Id*. at 220-21].

With respect to petitioner's automobile, the trial court found as follows:

> The disposition of the automobile prior to the plea is inexcusable on the part of Knox County. The automobile represented critical proof that exculpated or inculpated Mr. Harmer in relationship to the knocking noise. However, the general vehicle description and the license number of the vehicle which were preserved, form strong evidence that would inculpate Mr. Harmer when bolstered by the identification of the vehicle as that which the assailant was driving in the Weigel's incident by Mr. Bailey. Critical to the court's evaluation of the destruction or elimination of the automobile as a piece of evidence, is the fact that this record does not demonstrate that Mr. Harmer nor his counsel had any knowledge that the vehicle was not available when the guilty plea was entered July 17, 2001, on the eve of trial.... Mr. Harmer cannot demonstrate that any error had been made as a result of the unavailability of his motor vehicle, in that his plea of guilty was without knowledge one way or the other as to whether the automobile would be available on the date of trial as evidence against him.

[*Id*. at 221].

The Tennessee Court of Criminal Appeals agreed with the trial court.

> From our review of the record, it appears that only the "materiality" of the evidence is in dispute. As the post-conviction court found, the state possessed favorable evidence allegedly exculpatory and failed to provide this

evidence to the defense. However, as previously stated, the materiality of the suppressed evidence must be evaluated within the context of the entire record as to how it impacts the innocence or guilt of the accused. From this standpoint, we fail to discern any basis for the petitioner's due process claim. To begin, the exculpatory nature of the videotape and the automobile is tenuous at best because, even if preserved, these evidentiary items are not remotely probative of the petitioner's innocence or guilt. Instead, these evidentiary items are relevant only to impeach Officer Hagaman's testimony that he had probable cause to stop the petitioner. As such, we fail to see how the suppression of the petitioner's vehicle and the videotape undermined the confidence of the petitioner's guilty pleas. Also, it is abundantly clear that there was evidence of the petitioner's guilt independent of the videotape and car. In this case, sufficient evidence existed, including DNA evidence, that connected the petitioner to the crimes to which he ultimately pled guilty. Therefore, we conclude the petitioner failed to prove that the state violated his due process rights as contemplated by *Brady v. Maryland* and *State v. Ferguson*.

*Harmer v. State*, 2006 WL 1472513 at \*8 (internal citation omitted).

The findings of the Tennessee courts are supported in the record. Implicit in the state courts' findings was the fact that the videotape would not have been activated prior to Officer Hagaman's decision to stop petitioner's automobile and thus could not have shown the driving incident that precipitated that decision. Likewise, whether petitioner's car made a knocking noise was not relevant to the issue of whether Officer Hagaman had probable cause to stop petitioner in the first place. Based upon the foregoing, this court concludes that the state courts' determinations that the destruction of evidence was not a *Brady* violation were neither contrary to, nor did they involve an unreasonable application of, federal law. *See California v. Trombetta*, 467 U.S. 479 (1984). "Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a

significant role in the suspect's defense." *Id.* at 488. Petitioner is not entitled to relief on this claim.

Petitioner also claims that the destruction of the evidence violated his rights under the Tennessee Constitution and the ruling of the Tennessee Supreme Court in *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999), and that the state courts erred in finding no *Ferguson* violation. These claims are "not cognizable in a federal habeas corpus proceeding." *Spalla v. Foltz*, 788 F.2d 400, 405 (6th Cir. 1986). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); *Lewis v. Jeffers*, 497 U.S. 764, 779 (1990) ("federal habeas corpus relief does not lie for errors of state law"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Sinistaj v. Burt*, 66 F.3d 804, 807 (6th Cir. 1995) ("Errors of state law alone cannot form the basis of relief under federal habeas corpus.").

## C. Cumulative Errors

To the extent petitioner alleges that cumulative errors resulted in a fundamentally unfair hearing on the motion to suppress, such a claim is not cognizable in this court. *See, e.g., Williams v. Anderson*, 460 F.3d 789, (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue.").

VI.    Conclusion

The petition for habeas corpus relief will be **DENIED** and this action will be **DISMISSED**.  Rule 4 of the Rules Governing Section 2254 Cases In The United States District Courts.  Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253(c); Rule 22(b) of the Federal Rules of Appellate Procedure.  The court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous.  *See* Rule 24 of the Federal Rules of Appellate Procedure.  The court will further **DENY** petitioner leave to proceed *in forma pauperis* on appeal.

**AN APPROPRIATE ORDER WILL ENTER.**

                               _____s/ Thomas W. Phillips_____
                               United States District Judge

22